J-S05039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KYLA A. HOLLINGSHEAD | : | |
| | : | |
| Appellant | : | No. 720 WDA 2023 |

Appeal from the Order Entered May 3, 2023
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0001252-2013

BEFORE:  PANELLA, P.J.E., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:　　　　　　　**FILED: MARCH 28, 2024**

Appellant, Kyla A. Hollingshead, appeals *pro se* from the order denying her petition seeking a writ of *habeas corpus* on the grounds that her sexual offender obligations are unconstitutional as applied.  We affirm.

We set forth the factual and procedural history underlying Appellant's convictions in our opinion affirming judgment of sentence.

> In August 2010, Appellant was hired by Altoona Area High School to serve as an assistant coach of the girls' soccer team.  In October 2010, Appellant began a romantic relationship with a 15–year–old player on the team.  In October 2012, Appellant began a romantic relationship with a 16–year–old player on the team.  Eventually, both relationships led to sexual contact between Appellant and the players.

> The procedural history of this case is as follows.  On June 21, 2013, Appellant was charged via criminal information with two counts of corruption of minors and one count of institutional sexual assault.  On December 9, 2013, Appellant pled guilty to one count of corruption of minors and institutional sexual assault.  She was immediately sentenced to 60 days to 23½ months' imprisonment followed by 30 months' probation.  The trial court

also ordered that the Sexual Offender Assessment Board ("SOAB") evaluate Appellant to determine if she met the criteria to be classified as a[ Sexually Violent Predator ("SVP")].

On March 17, 2014, the Commonwealth filed a *praecipe* for an SVP hearing, which occurred on June 3, 2014. Corrine Scheuneman, MA, LPC, a member of the SOAB, testified on behalf of the Commonwealth[,] and Dr. Timothy Foley testified on behalf of Appellant. After considering post-hearing briefs, the trial court designated Appellant an SVP, and issued an opinion explaining its rationale.

***Commonwealth v. Hollingshead***, 111 A.3d 186, 188–89 (Pa. Super. 2015) (footnotes omitted).

As indicated, Appellant was convicted in 2013 but her crimes occurred prior to December 20, 2012, when the Sexual Offender Registration and Notification Act ("SORNA") became effective.[1, 2] SORNA added Subchapter H to the Sentencing Code, which retroactively imposed registration obligations

---

[1] **See** 42 Pa.C.S. §§ 9799.10-9799.42. SORNA was originally enacted on December 20, 2011, and made effective December 20, 2012. SORNA has since been amended several times.

[2] The Commonwealth alleged that some of Appellant's crimes continued after December 20, 2012. For example, the criminal information states that the crimes occurred between October 15, 2010, and February 1, 2013. Criminal Information, 6/20/13, at 1 (unnumbered). Similarly, the Commonwealth's expert at the SVP hearing described the offenses as involving "sexual contact that spanned from at least October 2010 through February 2013…." Opinion and Order, 7/30/14, at 4.

However, the parties may have stipulated to a narrower timeframe for purposes of the guilty plea, and the guilty plea transcript is not in the certified record. Neither the Commonwealth nor the Pennsylvania State Police, who participated in the proceedings, suggest that we affirm on the alternative basis that Appellant committed her acts after SORNA's effective date. We therefore accept, for purposes of our disposition, that all crimes occurred before December 20, 2012.

upon certain offenders, including Appellant. As to the crime of institutional sexual assault, 18 Pa.C.S. § 3124.2(a.2), the immediate predecessor to SORNA, colloquially known as Megan's Law III, did not require registration.[3] *Former* 42 Pa.C.S. § 9795.1(a)(1) (effective December 20, 2011, to December 19, 2012). Megan's Law III also did not require registration for corruption of minors. Under Subchapter H of SORNA, both corruption of minors and institutional sexual assault are deemed Tier I sexual offenses. 42 Pa.C.S. § 9799.14(b)(5) (institutional sexual assault); *id.* at § 9799.14(b)(8) (corruption of minors). Individuals convicted of Tier I offenses must register for 15 years. 42 Pa.C.S. §9799.15(a)(1). Separately, an offender who is deemed an SVP is required to register for life under Subchapter H. 42 Pa.C.S. § 9799.15(d) (imposing lifetime registration requirements for individuals who are "determined to be a sexually violent predator under section 9799.24"). Because the trial court determined that Appellant was an SVP in accordance with the statutory scheme set forth at Section 9799.24, Appellant was required to register for life.

We briefly discuss subsequent legislative enactments responding to decisions from our appellate courts. In **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017), our Supreme Court held that the set of registration obligations under Subchapter H constituted punishment. Thus, the retroactive

---

[3] While Megan's Law III required registration for ten years for a violation of Section 3124.2, the crime did not include the subsection pertaining to schools until February 20, 2012. 18 Pa.C.S. § 3124.2 (effective July 10, 2000, to February 20, 2012).

application of registration requirements amounted to an unconstitutional *ex post facto* law. In **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017) ("**Butler I**"), *rev'd*, 226 A.3d 972 (Pa. 2020) ("**Butler II**"), this Court applied **Muniz** and determined that the statutory mechanism for deeming offenders as SVPs was unconstitutional. We reasoned that, because an SVP finding may increase the period of registration that would otherwise apply, per **Muniz** that constitutes punishment and therefore required fact-finding beyond a reasonable doubt. **Butler I**, 173 A.3d at 1217 (holding that the facts which "increase[] the length of registration must be found beyond a reasonable doubt by the chosen fact-finder"). Our Supreme Court reversed, concluding that the registration, notification, and counseling ("RNC") requirements applicable to SVPs were not punitive. Therefore, those obligations may be applied retroactively.

> Although we recognize the RNC requirements impose affirmative disabilities or restraints upon SVPs, and those requirements have been historically regarded as punishment, our conclusions in this regard are not dispositive on the larger question of whether the statutory requirements constitute criminal punishment. This is especially so where the government in this case is concerned with protecting the public, through counseling and public notification rather than deterrent threats, not from those who have been convicted of certain enumerated crimes, but instead from those who have been found to be dangerously mentally ill. [**Kansas v.**] **Hendricks**, 521 U.S. [346,] 362-63 [(1997)]…. Under the circumstances, and also because we do not find the RNC requirements to be excessive in light of the heightened public safety concerns attendant to SVPs, we conclude the RNC requirements do not constitute criminal punishment.

**Butler II**, 226 A.3d at 992–93.

The General Assembly responded to *Muniz* by adding Subchapter I to the Sentencing Code, colloquially known as SORNA II. 42 Pa.C.S. § 9799.51(b)(4) (declaring that Subchapter I was intended to address, *inter alia*, *Muniz*). To that end, the General Assembly revised Subchapter H, making clear that it applies only to individuals who committed sexual offenses after December 20, 2012. 42 Pa.C.S. § 9799.11(c) ("This subchapter shall apply to individuals who committed a sexually violent offense on or after December 20, 2012, for which the individual was convicted."). Subchapter I, in contrast, is limited to crimes occurring between April 22, 1996, and December 20, 2012. 42 Pa.C.S. § 9799.52. The General Assembly imposed less onerous registration obligations upon this class of offenders. Our Supreme Court subsequently held in *Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020), that the Subchapter I obligations were non-punitive and therefore may be applied retroactively. However, *Lacombe* did not specifically address SVPs.

Turning to this litigation, the petition at issue in this appeal was filed on March 24, 2021. Appellant, acting *pro se,* alleged that her crimes were committed during the time that Megan's Law III was effective. In her view, because *Muniz* prohibited the retroactive application of SORNA, it follows that she had no registration obligations at all, as Megan's Law III did not require any period of registration for her two crimes. With respect to her SVP status, Appellant asserted that the holding in *Butler II* was inapplicable because the

- 5 -

offender in that case committed their offense after the effective date of SORNA.

On March 24, 2022, the trial court held a hearing on the petition. There, Appellant, now represented by Attorney Daniel J. Kiss,[4] argued as a general proposition that Subchapter I may apply only to individuals who had previously been required to register under a valid law. According to Appellant, she had never been subject to any type of registration, viewing SORNA II/Subchapter I as applying only to offenders who had previously been required to lawfully register. N.T., 3/24/22, at 4 ("Now individuals who were already registered … SORNA II appropriately [placed] them into Subsection I as they were already appropriately registered."). Appellant argued that she

_____

[4] The trial court directed the parties to appear for a hearing on July 1, 2021. The trial court then issued an order that same day stating that Appellant "appear[ed] this date but has requested an opportunity to secure legal counsel…." Order, 7/1/21, at 1. The court gave Appellant 30 days to have an attorney enter their appearance. While there is no corresponding entry of appearance indicated on the docket, on November 3, 2021, Attorney Kiss filed a postponement. Attorney Kiss then appeared at the hearing and signed the memorandum of law in support of the *pro se* petition. The docket, however, states that Appellant filed the document *pro se*.

After the trial court denied the petition, Appellant filed the notice of appeal *pro se*. The docket does not reflect that Attorney Kiss sought to withdraw. Under these circumstances, we decline to remand to the trial court for a determination of Attorney Kiss' status. We note that the original record includes a document filed by Appellant on June 5, 2023, requesting permission to proceed *in forma pauperis*. This indicates that Attorney Kiss was retained by Appellant only to draft the brief submitted to the trial court, as he never entered his appearance. Additionally, that Appellant sought *in forma pauperis* status after filing a *pro se* notice of appeal indicates that Attorney Kiss was not retained for appellate proceedings.

"falls into a very narrow black hole … of individuals whose crimes occurred under a former version of Megan's Law[,] but she was subject solely to SORNA with no savings clause to recapture or fix that." *Id.* at 3. Appellant asserted that "there's no ability for SORNA II to come back in time and capture someone who was never appropriately registered in the first place under SORNA I and should have been registered under a former version of Megan's Law." *Id.* Appellant did not separately address the SVP issue at this hearing. The trial court ordered the parties to submit briefs in support.

Appellant, the Commonwealth, and the Pennsylvania State Police each submitted a brief in support, and the court denied the petition with an accompanying opinion on May 3, 2023. Concerning Appellant's SVP status, Appellant argued:

> Ultimately, [Appellant] cannot be required to register as an SVP in this scheme. [Appellant] was subject to the evaluation process and requirements that were created in SORNA I rather than the prior versions of Megan's Law. Those requirements were found unconstitutional in *Muniz* and Subchapter I does not recapture [Appellant] for purposes of the SVP registration but solely for traditional registration. In [*Butler I*], SVP registration was found unconstitutional under SORNA I. *Butler I* was later overturned in part under [*Butler II*]. *Butler II* … only addressed the application of [p]ost[-]SORNA I offenders relating to the SVP classification; it did not address application to [p]re[-]SORNA I offenders. This is because that decision could not address [p]re[-] SORNA I offenders. Those offenders were subject to a statute that expired and its replacement was unconstitutional. Thus, there simply is no valid statute that could re[]capture the slim subset of individuals like [Appellant] into SVP registration.

Memorandum of Law, 4/29/22, at 3 (unnumbered; citations omitted).

Appellant filed a timely notice of appeal *pro se* and complied with the trial court's order to file a concise statement pursuant to Pa.R.A.P. 1925(b). The trial court filed a letter stating that its May 3, 2023 opinion and order disposed of Appellant's claims. Appellant raises the following issues on appeal:

> Whether the lower court committed error … when it failed to determine that retroactive application of … 42 Pa.C.S. § 9799.24[] to Appellant for the process of determining whether Appellant[] was a[n] [SVP] under Subchapter (H) of [SORNA] … was unconstitutional pursuant to the Pennsylvania Supreme Court['s] holding in [***Muniz***].

> Whether the lower court committed error in failing to find that … Appellant should only be subject to the traditional registration requirements pursuant to Subchapter (I) … of [SORNA], instead of the (lifetime) [SVP] provisions of said act.

Appellant's Brief at 3-4 (unnumbered; unnecessary capitalization omitted).

Consistent with the arguments advanced at the trial court level, Appellant maintains that her crimes predated SORNA's enactment and, by virtue of ***Muniz***, she had no reporting obligations since she was not otherwise subject to any prior version of the sexual registration laws. Appellant concedes that Subchapter I may lawfully be applied to her, but only with respect to the reporting obligations that attach to her convictions. ***See*** Appellant's Brief at unnumbered 2 (concluding that "this matter requires a remand for the purposes of issuing the proper (10) Ten Year … [r]equirement under Subchapter (I) … pursuant to Section 9799.55"). Appellant does not explicitly discuss ***Butler II*** but reiterates the core argument that the case does not address SVP designations for offenders whose crimes predate

SORNA. She therefore challenges the lifetime registration obligations that apply to SVPs.

As a threshold matter, we agree that the trial court had jurisdiction to address Appellant's claim. Our Supreme Court held in **Lacombe** that the "frequent changes to sexual offender registration statutes, along with more onerous requirements and retroactive application, complicate registrants' ability to challenge new requirements imposed years after their sentences become final." **Lacombe**, 234 A.3d at 617. The Court therefore authorized challenges to proceed outside of the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. **Id. See also Commonwealth v. Smith**, 240 A.3d 654, 658 (Pa. Super. 2020) (holding that, following **Lacombe**, "substantive claims challenging the application of Subchapter I of SORNA II's lifetime registration requirements are not cognizable under the PCRA and, thus, not subject to its time-bar").[5] Appellant's registration obligations present a question of law, which we review *de novo*. **Muniz,** 164 A.3d at 1195.

Proceeding to the merits, we find that the trial court properly denied Appellant's petition. Appellant makes much of the fact that **Muniz** barred the retroactive application of Subchapter H to her. However, as Appellant now concedes, our Supreme Court held in **Lacombe** that Subchapter I may be retroactively applied to her. Appellant seeks to minimize this holding by

---

[5] As it bears on Appellant's entitlement to counsel, we note that Appellant previously filed a timely PCRA petition and was appointed counsel. We affirmed the denial of PCRA relief. **Commonwealth v. Hollingshead**, 718 WDA 2018, unpublished memorandum (Pa. Super. filed May 30, 2019).

stressing that **Butler II** did not address the SVP statutory scheme that exists in Subchapter I, only Subchapter H. However, the legality of imposing collateral obligations retroactively rests on whether those obligations are punitive. Thus, SORNA II may apply retroactively to Appellant unless the SVP obligations are punitive.[6]

Notably, Subchapter I applies to individuals who were deemed SVPs under prior versions of sexual offender laws. The definitions section of Subchapter I defines the term "sexually violent predator" as follows.

> **"Sexually violent predator."** Subject to section 9799.75 (relating to construction of subchapter), a person who has been convicted of a sexually violent offense and who is determined to be a sexually violent predator under section 9799.58 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses **or who has ever been determined by a court to have a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses under a former sexual offender registration law of this Commonwealth**….

42 Pa.C.S. § 9799.53 (emphasis added).

The first part of this disjunctive does not apply; Appellant was not assessed pursuant to the SVP procedure set forth within Section 9799.58 as that statute did not exist at that time. Instead, Appellant was classified as an

---

[6] Appellant does not argue that the Subchapter I obligations, as compared to the Subchapter H obligations, are themselves punitive. She challenges only the legality of requiring her to register under Subchapter I due to her classification as an SVP. Thus, Appellant challenges the fact of registration, not the obligations that flow from registration.

SVP under the procedure codified at 42 Pa.C.S. § 9799.24. That statute is the "former sexual offender registration law of this Commonwealth." **_See id._**

Appellant thus qualifies as an SVP and must register for life under Subchapter I. Appellant is correct that the Court's holding in **_Butler II_** addressed the Subchapter H SVP statutory mechanism and not Subchapter I. But the critical point of **_Butler II_** for this matter rests in its rejection of our conclusion in **_Butler I_** that the SVP designation is itself punitive. As a result, the holding in **_Muniz_** involving **punitive** measures has no relevance.

Relatedly, the fact that **_Butler II_** involved the SVP assessment statutory scheme codified within Subchapter H is not to Appellant's benefit, as Appellant was likewise deemed to be an SVP under Subchapter H. In turn, Appellant's designation as an SVP per the Subchapter H procedure, which **_Butler II_** held was constitutionally valid, defeats Appellant's present claim. The basis for her registration under Subchapter I is due to that SVP classification, not the commission of the underlying crimes. **_See Hendricks_**, 521 U.S. at 362 (concluding that the Kansas statute authorizing civil commitment of sexually violent predators "does not make a criminal conviction a prerequisite for commitment—persons absolved of criminal responsibility may nonetheless be subject to confinement under the [a]ct"). It is thus irrelevant whether former versions of sexual offender laws in this Commonwealth required registration for her predicate offenses. Appellant's registration obligations are not tied to a particular crime; instead, she must register due to the trial court's determination that the Commonwealth proved that she was an SVP as

established by the Subchapter H statutory criteria. Thus, the General Assembly may lawfully require Appellant to register under Subchapter I due to that prior judicial determination.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 03/28/2024